United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

YOLANDA MITCHELL,

Plaintiff,

v

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO, a judicial branch entity,

Defendant.

______________________________________

IRMA TOLENTINO,

Plaintiff,

v

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO, a judicial branch entity

Defendant.

______________________________________/

No C 04-3135 VRW
No C 04-3301 VRW

ORDER

Defendant Superior Court of the State of California in and for the County of San Mateo (Superior Court) has moved for attorney fees in this Title VII case pursuant to 42 USC § 2000e-5(k) following the court’s June 7, 2007 entry of summary judgment in favor of Superior Court and against plaintiffs Irma Tolentino and Yolanda Mitchell. C 04-3135 Doc #70.

Superior Court has resolved its fee motion with plaintiff Tolentino (C 04-3135 Doc #88 at 2) through settlement, leaving for the court's resolution only Superior Court's motion for attorney fees against plaintiff Mitchell.

For the reasons stated herein, the court GRANTS Superior Court's motion for attorney fees.

I

A

The court's summary judgment order described in detail the unified factual chronology of the Mitchell and Tolentino cases. C 04-3135 Doc #70 at 5-16. Additionally, the order discussed and applied the standards for successfully opposing a motion for summary judgment in a case alleging discrimination under Title VII (id at 18-21), retaliation (id at 21-22), defamation (id at 22) and intentional infliction of emotional distress (id at 23-24). Finding that neither plaintiff had adduced evidence sufficient to establish a prima facie case of discrimination or retaliation or to oppose summary judgment on any of their other claim, the court ordered judgment entered in favor of Superior Court. The court noted that "Superior Court's evidence of legitimate personnel management activity is extraordinarily strong," and that "much of Superior Court's evidence was in plaintiffs' hands before these lawsuits were filed and [] the discovery process added little to support plaintiffs' view of these terminations." Accordingly, the court observed that the case might be an appropriate one for an award of fees and costs under 42 USC § 2000e-5(k). Id at 43.

\\



United States District Court
For the Northern District of California

B

Prior to filing the instant motion for attorney fees, counsel for Superior Court requested from Mitchell's counsel, William Hopkins, a one-week extension of the deadline established by Civil Local Rule 54-6 to file its motion for attorney fees and its bill of costs. C 04-3135 Doc #73 at 1-2. After leaving a voice mail message for Hopkins requesting the extension, Superior Court's counsel received a letter via facsimile denying the request. Id Ex A at 2. Accordingly, Superior Court's counsel then filed an ex parte application seeking the one-week extension, which the court granted. C 04-3135 Doc ## 72, 76. Superior Court then timely filed the instant motion for attorney fees. C 04-3135 Doc #77.

Superior Court argues that because it prevailed on summary judgment and because Mitchell's claims were unreasonable and without foundation, Superior Court is entitled to reasonable attorney fees under 42 USC § 2000e-5(k). C 04-3135 Doc #77 at 2. Superior Court asserts the following in support: (1) Mitchell's lawsuit against Superior Court contained unreasonable and unsupportable claims (C 04-3135 Doc #77 at 4); (2) Mitchell had access to the evidence upon which Superior Court based its termination decisions before filing the lawsuit (id at 5); (3) Superior Court attempted, but failed, to resolve the case through mediation and at a settlement conference (id at 5); and (4) because the court determined that Mitchell had failed to establish a prima facie case and, moreover, could not overcome Superior Court's evidence establishing legitimate, non-discriminatory reasons for firing Mitchell. Id.

Superior Court filed a fee request based on the lodestar method of fee calculation, consisting of reasonably expended hours



United States District Court
For the Northern District of California

multiplied by a reasonable hourly rate. C 04-3135 Doc #77 at 11; See Hensley v Eckerhart, 461 US 424, 433 (1983). The lodestar method is appropriate for determining reasonable fees under 42 USC § 2000e-5k and is "the guiding light of our fee-shifting jurisprudence." Gisbrecht v Barnhart, 535 US 789, 801-02 (2002), quoting Burlington v Dague, 505 US 557, 562 (1992).

Superior Court's motion requests $99,934.75 in fees broken down as follows:

| Year | Fees for Mitchell case only | Joint undifferentiated fees for both Mitchell and Tolentino cases |
|---|---|---|
| 2004 | - | 19,557.00 |
| 2005 | $31,303.50 | 89,626.00 |
| 2006 | $3,722.00 | 11,992.50 |
| 2007 | - | 8,643.00 |
| SUBTOTAL | 35,025.50 | 129,818.50 |
| 1/2 of joint subtotal | | 64,909.25 |
| GRAND TOTAL = Mitchell case subtotal plus ½ of joint subtotal | $99,934.75 | |

C 04-3135 Doc #79 Ex C. These figures reflect a billing rate of $205 per hour for all attorney hours billed through June 30, 2006 and a rate of $215 per hour for hours billed after June 20, 2006. C 04-3135 Doc #79 at 3 ¶ 7. Much of the amount claimed represents Superior Court's counsel's time spent on claims related to both the Tolentino and Mitchell jointly, of which Superior Court seeks half from Mitchell, while the remainder represents hours devoted to the Mitchell case alone. Id at ¶ 8. Superior Court's counsel asserts that both the Mitchell and Tolentino cases "stemmed from a common nucleus of operative fact and involved the same witnesses,"



United States District Court
For the Northern District of California

warranting joint timekeeping. The court finds this approach reasonable and that any further attempt to disaggregate time spent on the Mitchell and Tolentino cases is unlikely to produce a more accurate allocation.

Superior Court submits declarations detailing the experience and billing rates of Superior Court's counsel (C 04-3135 Doc #79) together with two declarations from other attorneys in the community knowledgeable about defense costs in employment litigation stating that the requested billing rates of $205 and $215 per hour are not only reasonable but low. C 04-03135 Doc #80 at 2 ¶¶ 3-4; Doc #81 at 2 ¶ 3.

The court finds both the billing rates and the number of hours claimed reasonable and approves the lodestar figure.

C

Mitchell failed to file timely opposition to the motion for attorney fees. Then, ten days after the August 9, 2007 deadline —— apparently prompted by Superior Court's reply brief pointing out Mitchell's failure to oppose —— the court received an "initial opposition" from Mitchell (C 04-3135 Doc #91) along with requests for relief from late filing, for leave to submit supplemental late briefing and for continuance of the hearing date. C 04-3135 Doc #92. In a supporting declaration, Hopkins proffered a number of excuses. Id. In particular, Hopkins stated:

> That I have recently relocated my office. Coupled with my efforts to change office locations, also to place closed matters in storage, and also coordinate arrangements to take my children to visit family on the east coast while they were out of school for the summer, I had attempted to coordinate continuances and rescheduling of matters. Unfortunately, I had neglected to properly calendar this matter during this



United States District Court
For the Northern District of California

> period, as I had thought that I had sought continuances where possible and rescheduled, accordingly.
>
> * * *
>
> I am submitting the current opposition (filed concurrently), but based on the request for relief made herein, respectfully ask that this matter be continued so as to allow Plaintiff to file a further opposition, particularly if the Court is inclined to grant fees and /or "not" [sic] stay this matter pending the resolution of the appeal. .[sic]

Id at 2 ¶¶ 1, 4.

In addition to being filed late and admittedly insufficient, the opposition brief essentially admitted that Mitchell had lacked a prima facie case of discrimination or retaliation. The opposition states:

> Awarding Attorney's fees against plaintiffs that aren't able to meet th[e] very difficult burden of essentially establishing something that only exists in the mind of the employer * * * particularly where the action is not frivolous or brought in bad faith, would have a chilling affect [sic] on discrimination and retaliation claims. A conclusion that discriminatory or retaliatory intent has not been shown does not invariably establish that the action is frivolous or brought in bad faith.

C 04-3135 Doc #91 at 2.

In response, Superior Court filed a timely surreply on August 21, 2007 in which it asked the court to deny Mitchell's requests based on the following points: Mitchell's opposition response was ten days late; Superior Court attempted, via letter of June 25, 2007, to meet and confer about the attorney fees, but Hopkins never responded to the letter; and Hopkins had known about Superior Court's motion for nine weeks, so his failure to comply with the local rules weighed against allowing additional time. Id. C 04-3135 Doc #93 at 2-3.

\\



United States District Court
For the Northern District of California

The court determined that neither oral argument nor further briefing was necessary and therefore took the matter under submission on the papers.

II

A

42 USC § 2000e-5(k) provides that a district court "in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs" in any action proceeding under Title VII of the Civil Rights Act of 1964. Either a prevailing plaintiff or a prevailing defendant may be awarded attorney fees under this provision. Christiansburg Garment Co v Equal Employment Opportunity Commission, 434 US 412, 421 (1978).

"A district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action is frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith" or "that the plaintiff continued to litigate after it clearly became so." Id at 421-22. The legislative history of this provision establishes that Congress wanted to "protect defendants from burdensome litigation having no legal or factual basis," id at 420, and the Supreme Court specifically noted that "many defendants in Title VII claims are small- and moderate-size employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights," an "equitable consideration" with which courts should be concerned in adjudicating Title VII cases. Id at 423 n20.

Nonetheless, fee awards to prevailing defendants under 42 USC § 2000e-5(k) remain unusual, presumably due, at least in part,



United States District Court
For the Northern District of California

to the countervailing public policy favoring vigorous enforcement of Title VII. The Ninth Circuit has stated that "a district court must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be 'airtight,'" while taking into account the financial burden to employers as noted in Christiansburg. EEOC v Bruno's Restaurant, 13 F3d 285, 287-88 (9th Cir 1993). Indeed, Mitchell's only argument in opposition to the motion is that awarding attorney fees against her "would have a chilling affect [sic] on discrimination and retaliation claims" (C 04-3135 Doc #91 at 2). Accordingly, the court must balance the competing equitable factors in adjudicating the instant motion.

B

First, the court considers whether Mitchell's suit was "frivolous, unreasonable, or without foundation," a determination that is subject to a variety of considerations including: the plaintiff's failure to produce any evidence; a prior adverse decision in court or administrative proceedings; the grant of summary judgment or directed verdict or dismissal for failure to state a claim; plaintiff's inability to establish a prima facie case; the novelty of the claims or unsettled nature of the legal issues; and whether the plaintiff is represented by counsel. See James W Moore, 10 Moore's Federal Practice, § 54.171[3][d] at 54-297-303 (LexisNexis 3d ed 2007). The court should avoid "hindsight logic," but "if the plaintiff insists on litigating in the face of overwhelming precedent in favor of the defendant, fees may be assessed against the plaintiff." Id at 54-299, 54-303.

\\



United States District Court
For the Northern District of California

Mitchell filed her case not only lacking direct or circumstantial evidence that her termination was improperly motivated, but in full knowledge of the strength of Superior Court's evidence that its motive was legitimate and non-discriminatory. Prior to filing the complaint, plaintiff had access to three key items of evidence.

The six-page non-punitive disciplinary letter dated August 4, 2003 documented dishonesty, insubordination, disrespectful or discourteous conduct, misuse of position, failure to follow policies, procedures or work rules or negligence in the performance of duties and violations of the Tenets of the Code of Ethics for court employees, specifically: personal integrity, professionalism and safeguarding of confidential information (see Doc #70 at 8 and Thompson Depo Ex 9, C04-3135 #35 Att #1 Ex B).

The Curiale report (C 04-3135 Doc #70 at 25) ran to fourteen pages, was specific and detailed and "amounted to a scathing review of Mitchell's performance in her position," documenting, inter alia, that Mitchell "managed by fear," used demeaning language toward co-workers and subordinates, attempted to undermine senior management and foster division and made improper use of staff resources. Doc # 70 at 10-11.

The eleven-page, single-spaced termination letter dated February 19, 2004 set forth Superior Court's grounds and factual bases for its adverse action against Mitchell: dishonesty; unacceptable performance; willful misconduct causing damage to public property; disrespectful or discourteous conduct and sexual harassment and/or discrimination toward a county officer or official, another employee or a member of the public; and misuse of



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**position and violations of seven of the tenets of the code of ethics for California court employees (Doc #70; Mitchell Depo Ex 17 at 1).**

**In the face of an exceptionally strong factual record establishing the legitimate management reasons for Superior Court's decision to dismiss her, Mitchell proceeded to retain counsel and filed and served her complaint.**

**Next, Mitchell undertook a "wide ranging and costly" discovery process that encompassed ten depositions (most of which were of Superior Court's managers and employees) (Doc #77 at 6) and emerged with no more evidence in her favor than she had begun with. At that point, Mitchell had the option to dismiss the case, but instead pressed on. "If a plaintiff's claim appears to be colorable when filed, but subsequent events clearly demonstrate that the claim is not defensible either on the law or the facts, fees may be awarded to a prevailing defendant if the plaintiff does not timely dismiss the litigation." Moore, 10 Moore's Federal Practice § 54.171[3][d] at 54-300. Voluntary dismissal allows a plaintiff to avoid unduly burdening the defendant with legal expenses after failing to muster the evidence needed to prove her case.**

**But Mitchell did not voluntarily dismiss the case after discovery failed to reveal evidence that would enable her to make out a prima facie case or to refute Superior Court's evidence of legitimate non-discriminatory motive. Rather, she waited while Superior Court incurred the substantial expense of assembling and bringing a summary judgment motion. She opposed the motion —— albeit ineffectively —— and the court granted summary judgment for Superior Court on all of her claims.**

****

Finally, there were no unsettled questions of law at play in Mitchell's case that would weigh against an award of fees to Superior Court. Rather, Mitchell proceeded under —— or in the face of —— settled rules of law applicable to all the causes of action in her complaint.

C

In her opposition, Mitchell does not contend that she acted on advice of counsel. Given that the opposition was prepared by counsel, however, the court deems it prudent to address this potential argument.

> Some plaintiffs have attempted to escape a fee assessment by arguing that they brought the suit on advice of counsel. This tactic is generally unsuccessful, because the plaintiff is ultimately responsible for the choice of counsel. Even if the lawyer is primarily responsible for the frivolous suit, the plaintiff can be charged with the defendant's fees.

Moore, 10 Moore's Federal Practice § 54.171(3)(e) at 54-302.

Although not an attorney herself, Mitchell was an experienced, long-term manager with the courts and may be presumed familiar not only with the course of litigation but also with —— at least in a basic form —— the discrimination, harassment and retaliation rules applicable to employers. It was Mitchell's responsibility to make an independent and objective evaluation of the underlying facts and to assess her likelihood of success in a suit against her former employer. The court does not know and cannot know what advice Mitchell's attorney gave her, but had Mitchell reviewed Hopkins's track record with Title VII cases, she would have known that Hopkins was in no position to turn a case burdened with bad facts for the plaintiff into a courtroom success.



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**The court has taken the occasion to review the ten most recent cases in which Hopkins appeared as counsel of record in this court (not including the instant cases). Of these ten cases, one is currently open —— C 05-5211 MMC. The outcomes in the other nine cases are as follows: defense motion to dismiss granted, motion for an award of attorney fees against plaintiff pending (C 05-0293 MHP)(order states: "The only issues raised by plaintiffs are issues that were not raised in the complaint nor were they raised in the arbitration proceedings despite ample opportunity to do so," Doc #87); two summary judgments for the defense with costs awarded to the defense (C 05-0317 SI Doc ##108, 126 and C 05-2820 WHA Doc #54); partial summary judgment for the defense (C 06-3914 SI Doc #63) followed by settlement (id Doc #66); and three settlements (C 04-4978 JSW; C 05-1519 EMC; C 06-5522 PJH). In the only one of these cases in which a settlement amount can be ascertained from the public docket, Hopkins's client settled for a gross amount of $3000 —— a sum unlikely to have netted more than a pittance after fees and costs were subtracted. C 04-4978 JSW Doc #35.**

**In just one case did Hopkins "prevail" at trial: the jury found for the defendant on all claims but one, awarding Hopkins's client one dollar on the remaining claim. C 04-3772 WDB Doc #124. Notwithstanding the shaky foundation for declaring victory, Hopkins's client unsuccessfully applied for attorney fees as a "prevailing party." Id Doc #126-30. The application was denied because of counsel's failure to keep "accurate, contemporaneous time records." Id Doc #140.**

**The ten cases also demonstrate significant problems with the quality of Hopkins's work on behalf of clients. Hopkins**

received a minimum of ten notices for failure to comply with e-filing requirements over a fifteen-month period from September 24, 2004, through December 5, 2005 (C 04-3772 WDB Doc ##3, 5, 8, 13, 23; C 05-0293 MHP Doc #26; C 05-0317 SI Doc ##6, 14; C 05-0669 CW Doc #5; C 05-1519 EMC Doc #21). Hopkins also: failed to respond to requests for admission of material facts, thus enabling the defendant to move for summary judgment on the ground that all material facts were deemed admitted (C 04-04978 JSW Doc #13); failed to oppose a motion to dismiss (id Doc #22, C 05-0317 SI Doc #18); was sanctioned by the court for failing to respond to discovery (C 06-3914 SI Doc #32); was threatened with sanctions for failure to file a settlement conference statement (C 06-5522 PJH Doc #17); and prematurely appealed the district court's order of dismissal only to have the appeal dismissed for lack of jurisdiction (C 05-0293 MHP Doc #58). After failing to file a settlement conference statement and failing to appear for a settlement conference, Hopkins, under order from a magistrate judge, paid $250 to charity to avoid a show-cause hearing re: the imposition of further sanctions. C 05-5211 MMC Doc ##13, 14, 30. In just one case, Hopkins: failed to attend a case management conference, failed to serve a defendant with process, failed to comply with the court's discovery standing orders and provided insufficient responses to discovery requests. C 06-3914 SI Doc ## 15, 26-29, 33, 41.

In the instant consolidated cases, Hopkins failed to produce requested documents during discovery (C 04-3135 Doc #29); refused opposing counsel's request for additional time to file documents (id Doc #73 Ex A at 2); failed to e-file on four occasions (C 04-3135 Doc ##4, 5, 11, 20); submitted documents with numerous



United States District Court
For the Northern District of California

typos, insufficient citations to evidence and annotations left over from the drafting process (e g "FILL IN FACTS RE EEO COMPLAINT AND CHARGE" (C 04-3135, Doc # 4 at 4 and passim); and, according to Tolentino's replacement counsel, failed to hand over Tolentino's complete files in an orderly or timely fashion after Hopkins's representation of Tolentino ceased early on in the litigation (C 04-3301 Doc # 51). And it bears repeating that in connection with the instant motion, Hopkins: denied Superior Court's counsel the courtesy of a modest extension of time to file the motion for fees and the cost bills in these consolidated cases, thus needlessly requiring Superior Court to spend even more on fees; failed to meet and confer with Superior Court's counsel regarding attorney fees as required by Local Rule 54-6; and failed timely to oppose the instant fee motion, ultimately submitting a tardy and poorly-crafted response.

In summary, Hopkins's track record, from the standpoint of a prospective Title VII plaintiff, cannot reasonably give rise to optimism about her chances of success in the litigation. Mitchell, as a long-term manager in the courts, may be presumed to be more aware than the average citizen that a specific attorney's competence or skill often has a direct bearing on the outcomes he achieves for his clients. It is therefore especially appropriate to hold Mitchell, with her special knowledge of the attorney's role, accountable for the actions of her attorney.

No matter what his or her level of skill, a lawyer is the agent of her client and "a losing civil rights plaintiff must answer for the conduct of her lawyer." Schutts v Nevada, 966 F Supp 1549, 1558 (DC Nev 1997). The Ninth Circuit does not appear to have

addressed this distinction, but a much-cited case from the Eleventh Circuit (cited with approval by the Ninth Circuit as to a different point in Miller v Los Angeles County Board of Education, 827 F2d 617, 621 (9th Cir 1987)) is in accord:

> Like any other principal, a client may be bound by the acts of his agent, acting within the scope of his authority * * *. [T]he perception that counsel was primarily at fault in filing or maintaining a frivolous, groundless, or unreasonable claim should play no role in the decision whether to assess attorney's fees against the plaintiff in a Title VII case.

Durrett v Jenkins Brickyard, Inc, 678 F2d 912, 915-16 (11th Cir 1982)(reversing district court's order refusing fee award to defendant based on belief that plaintiff "bore less responsibility for the fiasco than his lawyer.") A plaintiff thus obligated to pay the defendant's attorney fees may find redress in a malpractice action against her lawyer: "If the plaintiff's attorney's actions were negligent, she can sue him for malpractice." Schutts, 966 F Supp at 1558; "in [] cases * * * in which the plaintiff's counsel may appear to be primarily culpable, the plaintiff may find relief * * * in the form of a malpractice action"). Accordingly, it is appropriate to make an award of fees against Mitchell personally.

D

Mitchell's opposition does not contend that the requested award of fees would exceed her ability to pay. It also makes no assertions, conversely, about Superior Court's ability to shoulder the expenses of defending against Mitchell's suit without recouping any fees from her. The court nonetheless must address the former consideration in some manner because "a district court in cases

**involving 42 USC § 1981, 1983 or Title VII should consider the financial resources of the plaintiff in awarding fees to a prevailing defendant" although "a district court should not refuse to award attorney's fees to a prevailing defendant * * * solely on the ground of the plaintiff's financial condition." <u>Miller</u>, 827 F2d 617, 621 & n 5. The court must consider the financial impact on Superior Court as part of the balancing of equities discussed in II A, <u>supra</u>.**

**In the absence of data from Mitchell, the court consulted current employment listings on Superior Court's website. A listing for "lead deputy court clerk," a position lower in rank than that last held by Mitchell, advertised a monthly salary of $4,136 to $5,169, which translates to an annual salary of $49,632 to $62,028. <u>http://www.sanmateocourt.org/director.php?filename=./jobs/index.php</u> (consulted December 13, 2007). Mitchell's qualifications may therefore be presumed to place her earning capacity at or above this salary range. In view of Mitchell's presumed earning capacity, Superior Court's fee request is presumptively within Mitchell's ability to pay.**

**Meanwhile, the court lacks specific information about the impact of defense costs on Superior Court's fiscal situation. If Mitchell had raised an argument in this regard in her opposition —— which she did not —— Superior Court would have been prompted to address it in reply. In the absence of specific information, however, it is perhaps sufficient to note that Superior Court is a public agency funded by tax revenues collected by the State of California. Ultimately, the cost of defending against lawsuits such as Mitchell's must be borne by the taxpayers.**

IV

Following her termination from employment, Mitchell chose to retain counsel, initiate litigation, conduct extensive discovery and await summary judgment proceedings in full knowledge of the abundance of evidence against her claims and armed with little more than a near-certainty of failure.

Under these circumstances, it is not appropriate for Superior Court, a public entity entirely funded by taxpayer dollars, to be saddled with the substantial costs of defending this frivolous action. For the reasons stated herein, Superior Court's motion for an award of $99,934.75 is GRANTED.

Mitchell shall also pay Superior Court's costs as set forth in its cost bill (Doc #84) in full.

Mitchell's request for leave to submit supplemental late briefing is DENIED as untimely, futile and moot.

Mitchell's request to stay the motion for attorney fees pending the resolution of her appeal from the court's order on the merits is DENIED.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge